**AL–SITE CORPORATION, Plaintiff,**

v.

**CABLE CAR SUNGLASSES, Defendant.**

**CABLE CAR SUNGLASSES,
Counter-claimant,**

v.

**AL–SITE CORPORATION,
Counter-defendant.**

No. C 93–04354 CW.

United States District Court,
N.D. California.

Aug. 11, 1994.

Warren J. Krauss, Sedgwick Detert Moran & Arnold, San Francisco, CA, Peter T. Cobrin, Cobrin Gittes & Samuel, New York City, for Al–Site Corp.

Paul S. Nesse, Paul S. Nesse Law Offices, San Jose, CA, Michael N. Berg, Phillips Moore Lempio & Finley, San Francisco, CA, for Cable Car Sunglasses.

## ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WILKEN, District Judge.

Plaintiff's Motion for Preliminary Injunction and Defendant's Motion for Partial Summary Judgment were heard by this Court on May 13, 1994. Peter T. Cobrin of Cobrin, Gittes & Samuel appeared on behalf of Plaintiff Al–Site Corporation. Michael N. Berg of Phillips, Moore, Lempio & Finley appeared on behalf of Defendant Cable Car Sunglasses Company.

Having considered the papers filed by the parties and oral argument on the motion, and good cause appearing, the Court hereby DENIES both motions in all respects for the following reasons.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

This is a patent infringement case, filed December 9, 1993. The accused device is a plastic tag which holds eyeglasses at the temple and which contains a hole to allow the glasses to be hung on a display device in a vertical position. The history of the patents involved is as follows.

On December 11, 1990, Plaintiff obtained grandparent patent 4,976,532 for its "Hanger for Displaying Eyeglasses," which is described in the disclosure abstract as a hanger made of stiff resilient plastic material, with a relatively wide main section containing an aperture to receive a cantilevered support arm, and a narrow extension which passes through the nose gap of eyeglasses and bends backwards to form a loop around the eyeglass frame bridge and is attached by a rivet or snap to maintain the loop closed and prevent casual removal of the hanger. The purposes for the patent were to increase sales by providing a method for displaying multiple pairs of glasses of the same magnification strength simultaneously (as opposed to the prior art cubby hole method, in which only one pair was displayed at a time), and to discourage theft.

The application for 4,976,532 was initially rejected in part and objected to in part by the patent examiner. The majority of the claims were rejected for obviousness in light of prior art, including the Valiulis patent for a display hanger from which to hang merchandise (similar to the cantilever on which the 4,976,532 hanger was to be hung), the Govang patent for a merchandising display assembly with a display and advertising card with apertures to receive merchandise hangers (cantilevers) and the capacity to hold specially packaged merchandise, and the Smilow patent for a plastic hanger which cannot be casually removed for apparel belts. The remaining claims were objected to as being dependent on the rejected independent base claim.

Plaintiff did not accept the rejections, but responded with amendments and arguments to distinguish the hanger from the identified prior art. One of the amendments was a limitation that the hanger would maintain the

folded glasses in a horizontal position when hung on a cantilever. Plaintiff argued that this was not taught or suggested by the prior art, in that Smilow was designed to hang belts in a vertical position, and that the horizontal position was an improvement on the prior art because it approximates the appearance of the merchandise when worn. Plaintiff supported its argument in support of the patent with the declaration of a marketing expert, who expressed the opinion that horizontal display of glasses is advantageous for marketing and that display of glasses in a horizontal position was not obvious given the prior teachings in the apparel field to display long articles in a vertical position.

At the time this patent application was pending, the patent office was unaware of a 1982 German patent, the '306 Gebrauchsmuster, for a holding and hanging device for eyeglasses. This system included a plastic hanger card with an aperture at the top to be hung on a hook, the card being large enough to contain product information and deter theft, and being attached to a portion of the eyeglasses securely in such a way that eyeglasses' frame can be opened and closed and can be comfortably tried on without removal of the tag. The '306 teaches that the eyeglasses may be attached at any location on the card, in any orientation (horizontal, vertical, or any other position), and may protrude on one side or two sides of the card.

On October 31, 1990, while the 1532 patent was pending, Plaintiff filed a continuation application which ultimately resulted in the issuance of patent 5,144,345. Before the continuation application was examined, Plaintiff asked to amend it. The amendment contained the limiting language that the glasses would hang with a horizontal orientation when hung on the hanging card from the cantilever. The remarks in support of the amendment specified that "the fact that the eyeglasses are hung from a cantilever support in a horizontal manner forms part of the essence of the present invention," and that such horizontal orientation is important because it is aesthetically pleasing and therefore results in more sales. The cantilever support assembly is directed to consist of two parallel rods or one flat bar, as distinguished

from a single support rod, so that the hanging card does not tip and thereby affect the perfect horizontal position required. The securing means and aperture are each directed to be symmetrical, also to prevent dipping.

At some point during prosecution of the 5,144,345 patent, Plaintiff amended the continuation application again to eliminate the references to the horizontal orientation. On June 4, 1992, the patent examiner modified claims 51, 53 and 55 to restore the limitation to the horizontal orientation. "Providing a selected" and "providing a pre-selected" were restored to "securing a horizontal," and the language "with the temples in a substantially horizontal position" was reinserted into the claims.

In the meantime, on June 12, 1991, while the Plaintiff's application for 5,144,345 was pending, Defendant applied for a patent for its own hanger means and installation method which would hang glasses in a vertical position by a plastic hanger attached to a temple. Defendant disclosed the 4,976,532 patent and claimed that the attachment to the temple rather than the bridge was an improvement over the prior art because the glasses could be tried on and viewed without the distraction of a label on the forehead of the customer. Defendant commercialized its hanger system while its application was pending, beginning June 16, 1991. The patent was granted July 14, 1992, explicitly over the 4,976,532 patent.

One month after Defendant's patent was issued, Plaintiff applied for a continuation patent of its still pending parent patent 5,144,345. The 5,144,345 patent was issued September 1, 1992, and the continuation patent, 5,260,726, the patent in suit herein, issued on November 9, 1993. As in the predecessor patents, the 5,260,726 abstract recited that the hanger is attached to the bridge of the glasses, and the drawings and description of the preferred embodiment also showed and described hanging the glasses from their bridges in a horizontal position. However the claims utilized the broader language, rejected in 5,144,345, that the hanger would maintain the glasses "in a selected orientation", and further stated broadly that the

hanger would attach to "a portion of said frame" of the glasses.

Shortly before the 5,260,726 patent was issued, Plaintiff wrote to Defendant demanding that it discontinue using its eyeglass hanger card system. Defendant responded requesting a copy of the patent and clarification as to which of its hang tags was alleged to infringe the patent. Plaintiff responded with the filing of this action on December 9, 1993.

With respect to the balance of hardships, the parties agree that the non-prescription eyeglass industry is highly competitive, and that marketing techniques that provide commercial advantages affect a company's market share. In addition, Plaintiff claims that Defendant's alleged infringement encourages others to infringe. Defendant makes a showing that in connection with its vertical hang-tag system, it has invested $15,000 in patent fees and costs, over $100,000 in advertising and promotion, $5,000 to $7,000 in freight and shipping, $20,000 to $30,000 in tag costs, and $300,000 to $400,000 in point-of-purchase display cases. Defendant further declares that roughly 70% of last year's four million dollar revenue from Defendant's "Dr. Dean Edell" non-prescription glasses program involved vertical hang-tag glasses. An injunction preventing Defendant from selling the accused product would require the expense of retagging already distributed glasses and changing the advertising and promotional campaigns. Defendant claims it would be difficult to measure its damages resulting from an injunction if Defendant later prevailed.

## II. *LEGAL STANDARDS*

■ Injunctive relief in patent cases is statutorily authorized by 35 U.S.C. § 283. On a motion for preliminary injunction, Plaintiff must show: (A) a reasonable likelihood that it will succeed on the merits, (B) that irreparable injury will result if the injunction is not granted, (C) that the balance of hardships weighs in plaintiff's favor, and (D) that the granting of the injunction will not disserve the public interest. *Hybritech Inc. v. Abbott Laboratories,* 849 F.2d 1446, 1451 (Fed.Cir.1988).

Summary judgment is properly granted when no genuine and disputed issues of material fact remain; or, when viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1288–89 (9th Cir.1987). The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Eisenberg,* 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident and Indemnity Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991). Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## III. *DISCUSSION*

### A. *Motion for Preliminary Injunction*

#### 1. *Reasonable likelihood of success*

■ To determine reasonable likelihood of success, the court must determine both whether the patent is likely to be found valid and whether the accused device is likely to be found to infringe upon the patent. Both inquiries require a determination of the meaning and scope of the claim in suit. *Lemelson v. General Mills,* 968 F.2d 1202, 1206 (Fed.Cir.1992). One consistent interpretation must be given to the claims; that is, the claims cannot be construed in a limited way for purposes of finding them to be valid, and then construed in an expansive way for purposes of finding infringement.

#### a. *Meaning and scope of claim in suit*

■ *Lemelson v. General Mills* describes the process of interpreting claims as

follows. It is necessary to examine the language of the claim, the specification, and the prosecution history. The prosecution history is helpful because it gives insight into both what the applicant originally meant to claim and what the applicant gave up in order to meet the examiner's objections. The scope of the claim is a question of law, just as interpretation of a contract is a question of law, although there may be underlying fact issues involved in the determination.

The interpretation issues in the instant case are whether the 5,260,726 claims are limited to assemblies in which the glasses are hung from the bridge portion of the frame and/or hung in a horizontal orientation.

■ The prosecution history of the grandparent and parent patents demonstrates that both were limited to horizontal orientation. In the 4,976,532 application, the examiner's objections caused Plaintiff to amend the claims to specify horizontal orientation, and Plaintiff argued vigorously that the horizontal orientation was essential to the invention. In the 5,144,345 prosecution, after initially arguing that perfect horizontal orientation was essential, Plaintiff tried to broaden the claims to include other than horizontal orientation and was not allowed to do so.

However, the language of the 5,260,726 claim was deliberately broadened, in the precise way not allowed in the 5,144,345 patent, such that "selected orientation" was substituted for "horizontal." The 5,260,726 patent therefore cannot be interpreted to mean "horizontal." It is the applicant's prerogative to choose the language in its patent claims, and here the applicant clearly intended to attempt to broaden the patent's scope.

■ With respect to the issue of the part of the glasses to which the hanging card attaches, the 4,976,532 patent specifies that the hanging tag was to be attached to the bridge. The 5,144,345 and 5,260,726 patents do not contain such limiting language in their

claims. They do each, however, contain in the disclosure abstract, the following language:

A pair of non-prescription eyeglasses is mounted on a cantilevered support by a hanger that includes an element constructed of relatively stiff resilient plastic material. Such element includes a relatively wide main section having an aperture which receives the support arm, and a relatively narrow extension. The latter passes *through the nose gap* of the eyeglasses and is reversely bent to form a loop that *surrounds the eyeglass frame bridge.*

The abstract is not an explanation of the preferred embodiment, which cannot limit the claims, but a summary of the invention itself on which the claims are based. It is therefore relevant to claim construction. *See, e.g., Fogarty v. United States,* 5 Cl.Ct. 402, 403, 225 U.S.P.Q. 298 (1984), *aff'd* 770 F.2d 182 (Fed.Cir.1985); *B.E. Wallace Products Corp. v. United States,* 26 Cl.Ct. 490 (1992); *Lemelson v. United States,* 14 Cl.Ct. 318, 6 U.S.P.Q.2d 1657 (1988). Based on the record currently before the Court, it is likely that the 5,260,726 claims will ultimately be found to be limited to assemblies in which the glasses are attached to the hanger by the bridge.

### b. *Validity*

■ The validity of the 5,260,726 patent has not yet been judicially tested.[1] A patent is presumed to be valid, although the presumption may be overcome by clear and convincing evidence. 35 U.S.C. § 282. Where there is no evidence of invalidity other than the prior art already considered by the patent office, the challenging party must overcome the deference accorded the patent examiner, whose duty it is to issue only valid patents, and who is presumed to have properly done his or her job, to have expertise in interpreting the references, and to be familiar with the level of skill in the art. *American Hoist & Derrick Co. v. Sowa & Sons*

1. However, there has been litigation regarding the 5,144,345 patent, the parent to 5,260,726, with mixed results. A jury trial in the Central District of California resulted in a finding that the 5,144,345 was invalid on four grounds, including obviousness, in *Al–Site v. Bonneau,* CV–92–7553. A New York district court held that patent was valid in *Al–Site Corp. v. Opti–Ray, Inc.,* CV–92–4205. An appeal and request for remand in light of the recently discovered '306 Gebrauchsmuster are currently pending in *Opti–Ray.*

*Inc.*, 725 F.2d 1350, 1359 (Fed.Cir.1984), *cert. denied,* 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984).

■ On a motion for preliminary injunction, the alleged infringer must come forward with clear and convincing evidence of invalidity. *Ortho Pharmaceutical Corp. v. Smith,* 15 U.S.P.Q.2d 1856, 1990 WL 18681 (E.D.Pa. 1990). The burden then shifts to the plaintiff to show that it is likely to overcome those defenses. In other words, the moving party must show that the challenges to the patent lack substantial merit. *New England Braiding Co. v. A.W. Chesterton Co.,* 970 F.2d 878, 883 (Fed.Cir.1992).

■ Here, the presumption of validity is undermined by the prosecution history of the parent and grandparent patents since two of the three patent examiners who have examined the validity of Plaintiff's patents without the horizontal orientation limitation have made findings inconsistent with the validity of 5,260,726. The presumption is further undermined by the fact that the '306 Gebrauchsmuster prior art was not considered by any of the patent examiners, including the 5,260,726 examiner.

A patent may be shown to be invalid if the invention was fully anticipated by a prior invention, 35 U.S.C. § 102(b), or where the subject matter as a whole of the invention was obvious in light of the prior art, 35 U.S.C. § 103. A finding of anticipation requires that a single piece of prior art contain every element of the patented invention. It is not likely that the Gebrauchsmuster will be found to have anticipated Plaintiff's patents. The Gebrauchsmuster does not specify, either in its description of the claims or in its explanation of the purpose of the invention, that the invention is designed to permit display of multiple pairs of glasses on one cantilever.

■ However, Defendant presents a strong argument that the 5,260,726 and its predecessors were obvious in light of the '306 Gebrauchsmuster. In conducting an obviousness inquiry, the court is required to put itself in the shoes of a person of ordinary skill in the art, at the time the invention was made, and to look forward and see what that person would have found obvious. *Hybritech*

*Inc. v. Abbott Laboratories,* 4 U.S.P.Q.2d 1001, 1987 WL 123997 (C.D.Cal.1987), *aff'd* 849 F.2d 1446 (Fed.Cir.1988). The method for doing this is to look at the scope and content of the prior art, the difference between the patented invention and the prior art, and the level of skill in the art. 35 U.S.C. § 103; *Graham v. John Deere Co.,* 383 U.S. 1, 17, 86 S.Ct. 684, 693, 15 L.Ed.2d 545 (1966). Secondary considerations which may also aid the court in determining whether an invention was obvious are long-felt but unsolved need, commercial success of the patented invention, and failed efforts of others to accomplish the same result. *Id.* Other secondary factors suggested by courts are copying by others, praise for the invention, unexpected results, disbelief of experts, and commercial acquiescence in the patent.

Here the first patent examiner originally found the 4,976,532 application to be obvious in light of the Smilow (belt hanging) patent, and Plaintiff distinguished its invention primarily with a showing of the importance of being horizontal. Plaintiff does not explain why, if the invention no longer contains the horizontal distinction, it is not obvious in light of Smilow alone. Upon consideration of Gebrauchsmuster as well, it becomes even more likely that the patent will be found invalid on grounds that the invention was obvious.

Plaintiff argues that the secondary factors demonstrate that the invention was not obvious. Plaintiff relies most heavily on the claim that the glasses marketed with the hanger card have been a huge commercial success. Declarant Morton Nyman, president of Al–Site's successor-in-interest Magnavision, declares that sales have grown since this marketing method was implemented, that the increased sales are not attributable to pricing the glasses below competitors, and that in his opinion, the increased sales are directly related to the hanger card use. However, declarant Roger MacWilliamson, president of Defendant, declares his opposite opinion that Plaintiff's increased sales are attributable to the growth of the whole industry, which was due to the change in laws permitting non-prescription glasses in many states, to eyeglasses becoming "more of a fashion accessory," and to the demographic

change of baby-boomers reaching the age to need reading glasses. MacWilliamson also cites Plaintiff's position as industry leader and ability as such to exploit the expanding market through aggressive advertising. The Court finds MacWilliamson's explanation for Plaintiff's commercial success more convincing.

Nyman further declares that the hanger cards filled a need to display multiple pairs of glasses simultaneously, such that almost immediately after Magnavision introduced the hanger cards, several competitors began using infringing hanger cards. However, MacWilliamson declares that the practice of "pegging" merchandise, that is, hanging items from a hook, cantilever or "peg" of some type, is an old technique in the art of merchandising. If in fact the "invention" was obvious, no inference of copying can be drawn from other companies' contemporaneous use of the technique.

Thus, it is likely that ultimately the '726 patent will be found invalid on the grounds that the subject matter was obvious in light of the prior art.

### c. Infringement

■ Assuming that the patent were to be found valid, a determination of likely infringement requires a comparison of the interpreted patent claims with the accused device. If every element of the patent's claims are found within the accused device, there is "literal infringement." If not, the court must consider whether the accused device performs substantially the same function in substantially the same way to obtain the same result as the claimed invention which is the subject of the patent. If so, the device may be found to infringe under the doctrine of equivalents, subject to the limitation of file wrapper estoppel.

■ Plaintiff presents expert opinion evidence that each clause of the 5,260,726 patent claim "reads on" the accused device, and thus that there is literal infringement. However, this opinion is based upon Plaintiff's interpretation of the claims. If the claims are read to be limited to attaching the hanging card to the bridge of the glasses, as discussed above, then no literal infringement can be found.

Attachment to the temple is unlikely to be found equivalent to attachment to the bridge, since such a finding would be inconsistent with the finding of the patent examiner who issued Defendant's patent over the 4,976,532. Moreover, the changed location of the tag significantly affects the appearance of the glasses when worn by a prospective buyer, and thus is not an insubstantial change. Finally, file wrapper estoppel may preclude a finding of infringement under the doctrine of equivalents. Therefore, it is likely that no infringement will be found.

### 2. Irreparable injury

■ When both validity of the patent and its infringement are clearly shown, irreparable harm may be presumed. *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 390 (Fed.Cir.1987). However, the presumption will not be applied if the showing of infringement is not clear. *Nutrition 21 v. United States*, 930 F.2d 867 (Fed.Cir.1991). Here there is no clear showing of validity or infringement, and no presumption applies.

■ Irreparable harm may be shown if failure to issue the injunction would erode the patent owner's market share or would encourage others to infringe, especially if the value of the patent may be gone by the time of trial, as where the infringement comes shortly before the expiration of the patent in suit, or the technology in the field is changing so quickly that the patented technology is likely to be outmoded by the time of trial. *Hybritech v. Abbott*, 849 F.2d at 1456. However, in some cases, loss of market share injury is not irreparable but can be compensated with money damages. *Nutrition 21 v. United States*, 930 F.2d at 871–72.

■ In the instant case, the parties agree that market share loss is a necessary result of loss of competitive advantage in marketing techniques. However, the patent will not have lost its value by the time of trial. Further, Plaintiff's argument that Defendant's alleged infringement will encourage others to infringe is speculative and unconvincing. Plaintiff is already engaged in litigation over the parent patent with another party. Further, Defendant's use is unique in being ap-

parently protected by Defendant's own patent.

Thus Plaintiff's showing of irreparable harm is relatively weak. No more than a speculative possibility of irreparable harm has been shown.

### 3. Balance of hardships

■ The Court is required to compare the hardship to Plaintiff if the injunction is not granted with the hardship to Defendant if it is. The possibility of market share loss is equally applicable to both parties. Plaintiff would have us discount any injury to Defendant, arguing that an infringer who takes calculated risks by infringing upon a competitor's patent rights should not be heard to complain that an injunction will hurt its business. However, that proposition is limited to the situation in which infringement has been found after trial. *Illinois Tool Works Inc. v. Grip–Pak Inc.*, 906 F.2d 679, 684 (Fed.Cir.1990). Here there has not been even a clear showing of likely validity of the patent or likely infringement.

Furthermore, in the instant case, it is clear that Defendant did not intentionally infringe the patent in suit, which was not issued until two and one half years after Defendant filed its own patent application and began using its accused device. Since Defendant's device clearly does not infringe the parent or grandparent patent, Defendant cannot be deemed to have taken a calculated risk to infringe a patent. The fact that Defendant's patent application was granted over Plaintiff's 4,976,532 patent, which Defendant disclosed to the examiner, demonstrates the objective good faith of Defendant's position.

■ The equities, therefore, favor Defendant. Plaintiff allowed Defendant to make great expenditures to build up the marketing system which it now challenges as infringing, without notifying Defendant of its patent claims or potential claims of infringement. It is undisputed that Plaintiff knew of Defendant's use of the vertical hanging system beginning in June 1991. There is no indication in the record, however, that Defendant knew of Plaintiff's pending 5,260,726 application before October 1993. Furthermore, the

continuation of Defendant's use pending trial would not constitute such a drastic injury to Plaintiff as the expense of retagging would cause to Defendant. Therefore, the Court finds that the balance of hardships strongly favors Defendant.

### 4. Public Interest

There is always a public interest in protecting the rights secured by a valid patent. However, there has not been a clear showing that the patent at issue is valid or infringed. Other than the general public interest in preserving the patent system, there are no public interest factors to be considered in this action.

### 5. Conclusion

For all the reasons stated above, Plaintiff has not met its burden on the motion for preliminary injunction. Plaintiff has not adequately demonstrated likelihood of success on the merits, and the balance of hardships tips in favor of Defendant.

### B. Motion for Partial Summary Judgment

Defendant moves for partial summary judgment of non-infringement on the grounds that the 5,260,726 claims must, as a matter of law, be construed to be limited to assemblies in which the glasses hang in a horizontal orientation. As discussed above, this definition is unlikely to prevail in light of the clear language of the claims intentionally eschewing that limitation. It certainly cannot prevail as a matter of law on the record before the Court. Accordingly, this motion must be denied.

## IV. CONCLUSIONS AND ORDER

Therefore, for all the reasons stated above, Plaintiff's motion for preliminary injunction is DENIED. Defendant's motion for partial summary judgment is DENIED.

IT IS SO ORDERED.