NEW ENGLAND BRAIDING
COMPANY, INC., et al.,
Plaintiffs,

v.

A.W. CHESTERTON
COMPANY, Defendant.

Civ. A. No. 90–11145–S.

United States District Court,
D. Massachusetts.

Oct. 18, 1990.

Lee Carl Bromberg and Robert K. Tendler, Bromberg & Sunstein, Boston, Mass., for New England Braiding Co., Inc.

Charles C. Winchester, Fish & Richardson; and Barbara L. Moore, Cooley, Manion, Moore & Jones, Boston, Mass., for A.W. Chesterton Co.

MEMORANDUM AND ORDERS ON PLAINTIFFS' MOTION AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SKINNER, District Judge.

In this action the plaintiffs seek an injunction against the defendant's manufacture and sale of packing braid made with more warp fibers on the outside than on the inside, which plaintiffs claim infringe a patent issued to George Champlin, assigned to the plaintiff Seal Company of New England and of which the plaintiff New England Braiding Company is the licensee. The defendant has counterclaimed and brought a third party claim against Champlin, asserting in substance that Champlin stole the asserted invention from the defendant when he was employed by the defendant and seeking injunctive relief and damages.

The packing braid involved in this case is used in large industrial equipment to control leakage around valve stems or the stuffing boxes of rotating shafts which operate partially in a liquid, e.g., on a rotary pump. The defendant has been in the business of making packing braid and other industrial sealing devices for many years. The plaintiff corporations were organized in 1979 specifically to manufacture packing braid. The alleged invention is intended to correct the tendency of conventional braid to become distorted when wrapped around a shaft, a phenomenon known as "keystoning." The inner surface of the braid bunches in a manner which permits some

leakage and increases the wear on the surface of the braid. The purported invention adds additional longitudinal fibers to the outside of the braid, which counteracts the braid's tendency to distort when bent and allows the inner surface of the braid to make relatively smooth and continuous contact with the shaft. Typically, but not necessarily, these extra fibers cause the braid to have a trapezoidal cross-section.

Champlin was employed by the defendant as an engineer from early in 1968 until October, 1975. He worked in the Research and Development Division until January, 1974, when he became manager of the Vanway Department, which made "O" rings. According to the defendant's witnesses Bernier and Graham, Champlin was also an expert on packing braid, and participated in the experimental development of the defendant's "Style 1" braid which also eventually incorporated the additional longitudinal yarns which characterize the plaintiff's asserted invention. Mr. Bernier testified that the defendant's chief engineer, Frank van Vleet, invented the anti-keystone configuration of the braid, as did Mr. van Vleet himself. Mr. Bernier further testified that Champlin's primary interest was packing braid, and when he was discharged he said that he would like to patent the anti-keystone braid if the company did not do so. Mr. Bernier told him that if the company did not patent the braid, there was no reason why he (Champlin) could not patent it.

Champlin testified to the contrary that when he worked for the defendant he was primarily concerned with "O" rings and not with braid, and he denies any conversation with Bernier about patenting the product himself. I note, however, that when Champlin decided to start his own businesses in 1979, it was to make packing braid, not "O" rings or any other kind of sealing device. Champlin testified that when he picked up the defendant's catalogue in 1981 he was reminded of the keystone problem, and the idea came to him for his asserted invention. What the catalogue did show was that the defendant had not pursued the invention itself, since no braid with a trapezoidal section, or otherwise incorpo-

rating the additional longitudinal yarns, appeared in it. Champlin secured the first of the patents in question in 1985, and since that time the two plaintiff corporations, which are owned and controlled by Champlin, have been manufacturing and marketing the trapezoidal anti-keystone braid with considerable commercial success.

In late 1989, the defendant announced the production of a similar braid, and sent samples of it to potential users, some of whom are customers of the plaintiffs. This action for injunctive relief followed.

■ On the foregoing evidence I find that it is unlikely that Champlin was the inventor of the anti-keystone braid in question. Accordingly I do not find that the plaintiffs are likely to succeed on the merits, and I deny the motion for a preliminary injunction. 35 U.S.C. § 102(f).

■ This ruling does not lead to the allowance of the defendant's motion for summary judgment, since there remain disputed issues of fact on the merits, such as invention, abandonment, and whether Champlin disclosed in his patent the best embodiment of his invention then known to him. My view of the disputed evidence as fact finder does not permit the granting of a motion for summary judgment. The motion for summary judgment is accordingly denied.

■ Under Fed.R.Civ.P. 65(a)(2), however, the evidence taken at a hearing on a preliminary injunction becomes part of the record at trial on the merits. On the basis of the evidence which I have summarized above, I find as a fact on the merits that Champlin was not the inventor of the anti-keystone braid. This finding is dispositive of the plaintiffs' claim. I shall hold the case open for sixty days, however, realizing that not all of the facts may have been developed at this early stage. The plaintiffs may move for reconsideration of my finding within the sixty days, provided that the motion be accompanied by an affidavit detailing what additional evidence they propose to introduce on the subject of invention. If the case is reopened on that point, it will be open for all purposes.

The defendant's counterclaim and third party claim, which have not been considered up to this point, remain for disposition.

The temporary restraining order previously entered is vacated.