NEW ENGLAND BRAIDING CO., INC. and Seal Company of New England, Inc., Plaintiffs–Appellants,

v.

A.W. CHESTERTON COMPANY, Defendant–Appellee.

No. 91–1080.

United States Court of Appeals, Federal Circuit.

July 28, 1992.

Lee Carl Bromberg, of Bromberg & Sunstein, Boston, Mass., argued for plaintiffs-appellants. With him on the brief was Kerry L. Timbers. Of counsel was Richard K. Tendler.

Barbara L. Moore, of Cooley, Manion, Moore & Jones, Boston, Mass., argued for defendant-appellee. With her on the brief was Robert S. Molloy. Also on the brief were Charles C. Winchester, Jr. and John R. Schiffhauer, of Fish & Richardson, Boston, Mass.

Before NIES, Chief Judge, RICH and NEWMAN, Circuit Judges.

NIES, Chief Judge.

New England Braiding Co., Inc. and Seal Company of New England, Inc. (collectively "NEBCO") appeal from the October 18, 1990, order of the United States District Court for the District of Massachusetts, Civil Action No. 90–11145–S, denying NEBCO's motion to preliminarily enjoin A.W. Chesterton Co. from infringing U.S. Patent Nos. 4,550,639 (the '639 patent) and 4,729,-227 (the '227 patent), 746 F.Supp. 1200. The district court found that NEBCO was not likely to succeed on the merits of its suit because the evidence of record indicated that George Champlin, the inventor named in the patents, was not the inventor of the asserted patents having derived the invention from one of Chesterton's employees. We affirm.

## BACKGROUND

The patents at issue relate to a braided compression packing used to control leakage around rotating shafts which operate partially in a liquid.[1] The packing is cut into rings which are inserted into an annular space, called a stuffing box, between the rotating shaft and the body of a mechanical device (e.g., a pump). A packing gland or metal flange attached by bolts to the device is tightened against the top of the packing ring, thus effectuating a seal.

The patented inventions address the problem of leakage around rotating shafts which occurs when traditional packing having a square cross-sectional area is used. Such packing, when wrapped around a shaft, results in the edge of the packing nearest the shaft bunching-up while the edge furthest from the shaft is stretched. The braided packing thus deforms into a trapezoidal or keystone shape with the larger side of the braid's cross-section adjacent to the shaft.

1. For example, claim 1 of the '277 patent reads as follows:
Mechanical compression packing of square or rectangular cross-section having central core yarns, a plurality of axial warp yarns, said plurality of said axial warp yarns being placed in a predetermined unsymmetrical pattern having different numbers or amounts of warp fibers at different positions and carrier yarns braided about said warp yarns, such that parallelism of opposite cross-sectional sides of said completed packing is maintained as said packing is wrapped about a cylindrical surface.

880

Squeezing such packing with the flange during the sealing process results in an uneven force acting upon the shaft. The uneven force results in uneven wear and requires the braided packing to be replaced more often.

To correct the "keystoning" problem, the patents in suit call for a greater number of yarns in the outer portion of the packing than in the inner portion closest to the shaft. This trapezoidal or keystone-shaped arrangement of yarns deforms upon being wrapped around a shaft into a square shape.[2]

2. For convenience, we refer to trapezoidal shape although the record indicates some braid-ing may be constructed square-shaped with the same advantages.

STUFFING BOX — GLAND
UNCOMPRESSED
UNIFORM DENSITY
SHAFT
NO KEYSTONING
BEFORE COMPRESSION

STUFFING BOX — GLAND
COMPRESSED
UNIFORM DENSITY
LESS WEAR
SHAFT
COMPRESSED PACKING
AFTER COMPRESSION

When this type of packing is squeezed by the sealing flange, a uniform force acts upon the shaft resulting in a better seal and less wear on the braided packing and the shaft.

The parties do not dispute that in the early 1970s, Frank Van Vleet, an engineer at Chesterton, noted that the problem of keystoning might be overcome by constructing packing which would have a trapezoidal shape when laid flat. Chesterton thereafter experimented with different shapes, including trapezoidal, for its braid-ed packing, but did not publicly announce the production of a trapezoidal braiding until late 1989.

Champlin was a design engineer at Chesterton from 1968 through October of 1975, and spent part of his tenure in the research and development department. After his departure from Chesterton, Champlin start-ed his own braiding business and secured the '639 and '227 patents in 1985 and 1988, respectively. The patents were assigned to Seal Company of New England, Inc., which

granted an exclusive license to New England Braiding Co., Inc. These two companies have been manufacturing and marketing trapezoidal-shaped braiding since 1982.

On May 1, 1990, NEBCO filed a complaint against Chesterton in the United States District Court for the District of Massachusetts alleging infringement of the two patents. Shortly thereafter, NEBCO filed a motion for a preliminary injunction. The district court held a hearing on June 26–27, 1990, and ultimately denied the injunction.

## ISSUE

Was the district court's denial of NEBCO's preliminary injunction motion an abuse of discretion?

## DISCUSSION

A trial court's decision to issue an injunction is discretionary. However, to obtain the extraordinary relief of an injunction prior to trial, the movant carries the burden to establish a right thereto in light of the following factors: 1) that the movant is likely to succeed on the merits at trial; 2) that it will suffer irreparable harm if preliminary relief is not granted; 3) that the balance of the hardships tips in the movant's favor; and 4) that a preliminary injunction is in the public interest. *Nutrition 21 v. United States*, 930 F.2d 867, 869, 18 USPQ2d 1347, 1348–49 (Fed.Cir.1991); *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387, 2 USPQ2d 1926, 1927 (Fed.Cir.1987).

■ When a preliminary injunction is granted, to obtain reversal on appeal, an alleged infringer will prevail upon convincing this court that one of the factual premises is clearly erroneous. *See, e.g., Film-Tec Corp. v. Allied–Signal Inc.*, 939 F.2d 1568, 19 USPQ2d 1508 (Fed.Cir.1991). In contrast, when a preliminary injunction is denied, the movant carries a heavier burden to obtain a reversal. The movant must show not only that one or more of the factors relied on by the district court was clearly erroneous, but also that a denial of the preliminary relief sought would amount to an abuse of the court's discretion upon reversal of an erroneous finding. In this case, the district court found that NEBCO was not likely to succeed at trial because the evidence of record indicated that Champlin did not invent the braiding claimed in the asserted patents. In view of that finding, the court did not go on to make additional findings respecting the other factors of irreparable harm, balance of hardships and public interest.

■ NEBCO contends that the district court erred in determining that NEBCO was not likely to succeed at trial because the court failed to consider and "give weight" to the statutory presumption of validity. Section 282, United States Code, Title 35 (1988), provides that a patent shall be presumed valid.[3] Contrary to NEBCO's argument, the presumption of validity is not evidence which can be "weighed" in determining likelihood of success. The presumption acts as a procedural device which places the burden of going forward with evidence and the ultimate burden of persuasion of invalidity at trial on the alleged infringer. *See* 35 U.S.C. § 282; *Nutrition 21*, 930 F.2d at 869, 18 USPQ2d at 1349. Thus, unless the alleged infringer undertakes to challenge validity with evidence, the patentee need do nothing to establish its rights under the patent.

However, the presumption does not relieve a patentee who moves for a preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patent's validity. *Id.* At this preliminary stage, the trial court does not resolve the validity question but rather must, as the court did here, make an assessment of the persuasiveness of the challenger's evi-

---

3. Section 282 provides, in pertinent part, as follows:

A patent shall be presumed valid.... The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting it.

dence,[4] recognizing that it is doing so without all evidence that may come out at trial. The district court cannot be held to have erred in deciding that the patentee failed to make a sufficient showing of likelihood of success required to support a preliminary injunction where the evidence presented in support of invalidity raises a substantial question, although the defense may not be entirely fleshed out.[5] Given the time constraints within which an accused infringer must usually respond with evidence to a motion for preliminary injunction, in this case within a few weeks, a fully comprehensive presentation of its defenses cannot reasonably be required. Because severe time constraints are usual, the Supreme Court has recognized that a motion for a preliminary injunction must customarily be decided "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas v. Camenisch,* 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981). Indeed, such a record does not usually allow for a reliable resolution of the merits. While it is not the patentee's burden to prove validity, the patentee must show that the alleged infringer's defense lacks substantial merit.

■ The trial court concluded on the evidence before it that NEBCO was not likely to prevail over Chesterton's charge that the patents in suit are invalid under 35 U.S.C. § 102(f) (1988). Section 102(f) requires that the patentee be the actual inventor of the subject matter patented. NEBCO argues, *inter alia,* that the record does not establish the complete identity of its pat-

ented braiding with any trapezoidal braiding developed by Van Vleet.

Section 102(f) provides, in pertinent part, as follows:

A person shall be entitled to a patent unless—

. . . .

(f) he did not himself invent the subject matter sought to be patented

. . . .

To invalidate a patent for derivation of invention, a party must demonstrate that the named inventor in the patent acquired knowledge of the claimed invention from another, or at least so much of the claimed invention as would have made it obvious to one of ordinary skill in the art. *See Agawam Co. v. Jordan,* 74 U.S. (7 Wall.) 583, 602–03, 19 L.Ed. 177 (1868); *DeGroff v. Roth,* 412 F.2d 1401, 1405–06, 162 USPQ 361, 365 (CCPA 1969).

Here, the trial court determined that NEBCO was not likely to withstand Chesterton's charge that Van Vleet invented the patented braiding pattern and that Champlin derived the invention from Chesterton. The court first summarized the testimony of three of Chesterton's employees, Van Vleet, the alleged first inventor, Edgar Bernier, the director of research and development, and Keith Graham, a technician. Specifically, Bernier and Van Vleet had testified that Van Vleet invented the braiding configuration in the mid–1970's; Bernier and Graham had testified that Champlin was an expert on braided packing who had participated in the experimental development of the braiding which eventually incorporated the patented braiding pattern;

---

**4.** "Entitlement [to preliminary relief] is determined in the context of the presumptions and burdens that would inhere at trial on the merits." *H.H. Robertson,* 820 F.2d at 388, 2 USPQ2d at 1928. As in deciding a summary judgment motion, the trial court, in ruling upon a motion for a preliminary injunction, "must be cognizant of the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)). Of course, the movant in a preliminary injunction proceeding need not present sufficient evidence to be entitled to summary judgment in its favor.

**5.** Statements as to the quantum or sufficiency of the showing take a variety of formulations, *e.g.,* from restrictive statements such as "reasonable certainty," "strong probability," "substantial likelihood," to merely a "reasonable possibility" or "probable chance." *See* 11 Wright and Miller, *Federal Practice and Procedure* § 2948, n. 54 (2d ed.1983). The authors suggest that this standard interacts with the degree of harm which each party will suffer, *i.e.,* the greater the harm, the less certainty required for likelihood of success. *Id.* at n. 60.

and Bernier had testified that when Champlin was discharged he said he would like to patent the experimental braiding if the company did not do so. The court then noted NEBCO's witness, Champlin, testified that he invented the subject braiding in the early 1980s, that he was primarily concerned with "O" rings and not with braiding while he worked for Chesterton, and that he did not have a conversation with Bernier when he was discharged concerning a wish to patent the experimental braiding.

Essentially, the court proceeded to make a credibility determination in finding that it is unlikely that Champlin was the inventor of the patented braiding. The trial court noted, *inter alia*, that Champlin's testimony was weakened by the fact that when Champlin decided to start his own business in 1979, it was to make braided packing, not "O" rings or any other kind of sealing device. A credibility determination is well within the court's province when ruling on a preliminary injunction motion and we have no basis in this case for overturning the district court's assessment. The court's finding that NEBCO failed to show that it was likely to succeed on the merits must stand.

NEBCO makes numerous arguments to us on the inadequacies or lack of evidence respecting technical requirements to hold a patent invalid under section 102(f). However, these arguments generally indicate a misperception of the nature of proceedings at the preliminary injunction stage and the role of appellate review as well. The question is not whether derivation was proved or not, a question on which the district court reserved judgment pending receipt of additional evidence at trial. Nor is it our function to resolve that issue. As this court stated in *T.J. Smith v. Consolidated Medical Equip.*:

> [W]e find that [T.J. Smith] misjudges the role of this court on reviewing a denial of a preliminary injunction, as evidenced by [T.J. Smith's] election to simply ignore what this court said in *Roper:*

Roper's request that this court make a finding of infringement the district court expressly reserved is wholly inappropriate. Roper misconstrues the appellate function of this court and the decisional criteria in considering motions for preliminary injunctions. Substantive issues, such as validity and infringement, are not raised for final resolution by such motions.

821 F.2d 646, 647, 3 USPQ2d 1316, 1317 (Fed.Cir.1987) (quoting *Roper Corp. v. Litton Sys.*, 757 F.2d 1266, 1271, 225 USPQ 345, 348 (Fed.Cir.1985)).

Some arguments raised by NEBCO, such as the need for the court to give explicit consideration to claim language, would be worthy of some concern after trial, but at this point, all we need say, and all we do say, is that the trial court has not seriously misjudged the evidence underlying its finding respecting NEBCO's likelihood of success at trial.

With respect to other burdens NEBCO carried into this appeal, Chesterton points to evidence it submitted of Champlin's failure to disclose the best mode of practicing the invention as an alternative basis for denial of likelihood of success. However, we need not address this issue in view of our agreement with NEBCO on its likelihood of success arguments respecting inventorship.

Finally, we note NEBCO previously asked this court to grant an injunction pending this appeal which was denied for failure of proof of irreparable harm. *New England Braiding Co. v. A.W. Chesterton Co.*, No. 91–1080 (Fed.Cir. Jan. 8, 1991) (order denying injunction pending appeal). Here, NEBCO primarily seeks to rely on a "presumption" of irreparable harm by reason of its *strong* showing of validity and infringement. In view of our holding herein, NEBCO's position is clearly untenable respecting any presumption of harm. We have also considered NEBCO's arguments regarding certain evidentiary rulings by the district court and find them to lack merit.

## CONCLUSION

For the reasons stated above, the district court's denial of NEBCO's motion for a preliminary injunction is

AFFIRMED.

PAULINE NEWMAN, Circuit Judge, concurs in the judgment.