**ABBOTT LABORATORIES, Plaintiff,**

v.

**LIFESCAN, INC. and Selfcare, Inc., Defendants.**

**No. Civ.A. 98–12053–EFH.**

United States District Court, D. Massachusetts.

Feb. 22, 1999.

Lee C. Bromberg, Robert L. Kann, Lisa M. Tittemore, Karen L. Peterson, Christopher D. Engebretson, Bromberg & Sunstein, Boston, MA, Karen L. Hale, Lawrence S. Pope, Abbott Laboratories, Abbott Park, IL, Mark Barmak, Abbott Laboratories, Office of the General Counsel, Abbott Park, IL, for Abbott Laboratories, plaintiff.

David R. Schmahmann, David C. Henderson, Nutter, McClennen & Fish, Boston, MA, Philip S. Johnson, Barbara L. Mullin, Thomas D. Smith, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, PA, Harman Avery Grossman, Johnson & Johnson, New Brunswick, NJ, Joseph R. Condo, Woodcock, Washburn, Kurtz, Mackiewicz & Norris, Philadelphia, PA, for Lifescan, Inc., defendant.

Sarah E. Cooleybeck, Michael V. Dowd, Philip C. Swain, Robert L. Bocchino, Jr., Peter B. Ellis, Foley, Hoag & Eliot, Boston, MA, for Selfcare, Inc., defendant.

### MEMORANDUM & ORDER

HARRINGTON, District Judge.

This matter is before the Court for consideration of Abbott Laboratories' ["Abbott"] motion for preliminary injunction, in

---

which Abbott requests that this Court enjoin LifeScan, Inc. and Selfcare, Inc. ["the defendants"] from the manufacture and sale of the defendants' FastTake® test strips, which are used to monitor blood glucose levels. After consideration of the parties' papers and three days of hearings on the motion, the Court finds that Abbott is unlikely to succeed on the merits of its claim of patent infringement; accordingly, the Court denies Abbott's motion.

To obtain a preliminary injunction, Abbott must establish four factors: (1) that it is likely to succeed on the merits at trial; (2) that it will suffer irreparable harm if the preliminary injunction is not granted; (3) that the balance of hardships favors Abbott; and (4) that a preliminary injunction is in the public interest. *See, e.g., New England Braiding Co. v. A.W. Chesterton Co.,* 970 F.2d 878, 882 (Fed.Cir. 1992). Although the parties have contested each of the elements, it is unnecessary for the Court to go beyond the first element in disposing of the motion.

At issue in this litigation is whether the defendants' FastTake® product infringes Claim One of Abbott's patent, United States Patent No. 5,820,551 (the '551 patent). The '551 patent pertains to an enzyme-coated electrode that detects the concentration of a compound in blood (e.g., glucose) by measuring the electrical current that is generated when the blood comes in contact with the enzyme. Claim One of the '551 patent claims, in relevant part,

> a "single use disposable electrode strip ... to detect a current representative of the concentration of a compound in a drop of whole blood sample comprising ... an active electrode ... in electrical conduct with [a] conductor and positioned to contact said blood sample ... wherein said active electrode is configured to be exposed to said whole blood sample without an intervening membrane or other whole blood filtering member and is formed by coating a portion of the first conductor with a mixture

of or layers of an enzyme which catalyzes a redox reaction with said compound in whole blood and a mediator compound which transfers electrons from said redox reaction to said first conductor to create a current representative of the concentration of said compound in said whole blood sample...."

Since 1987, Abbott has made commercial use of the '551 technology by selling glucose monitoring strips, which are used primarily for at-home testing of glucose levels by diabetics. In April, 1998, the defendants introduced their FastTake® glucose strips to the market. The FastTake® product is similar to Abbott's products in that it uses an electrode to detect the concentration of glucose in blood by measuring the electrical current that is generated when the blood comes in contact with an enzyme. This similarity is the basis of Abbott's claim of infringement. In response, the defendants contend, however, that Abbott has not shown that the FastTake® strips satisfy three of the claim's conditions: (1) that the gel membrane is *"in electrical conduct with [the] conductor"*; (2) that the gel membrane is *"formed by coating a portion of the first conductor with a mixture of or layers of an enzyme ... and a mediator compound"*; and (3) that the active electrode is *"configured to be exposed to said whole blood sample without an intervening membrane or other whole blood filtering member."*

Literal infringement involves a two-step determination: first, the proper construction of the asserted claim; and, second, a determination whether the claim as properly construed reads on the accused product. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1581–82 (Fed.Cir.1996). The first step, claim construction, is a question of law. In deciding what a claim means the Court first looks at the language of the claim, the patent specification, and the prosecution history. *See Vitronics,* 90 F.3d at 1582–83.

The determinative phrase in this case is that the active electrode must be *"configured to be exposed to said whole blood sample without an intervening membrane or other whole blood filtering member."* The ordinary and natural meaning of the phrase "without an intervening membrane or other whole blood filtering member" is without any type of filter whatsoever—neither an intervening membrane nor any other whole blood filter. The absence of any filter was the innovation of the '551 patent and plaintiff's products are manufactured with no whole blood filter. Based on the evidence submitted, the Court finds that the FastTake® product *does* contain a whole blood filter, and, consequently it does not infringe Abbot's patent.

Abbott does not seriously dispute that the FastTake® product filters whole blood from reaching the carbon layer. The FastTake® product consists, in relevant part, of a carbon layer and a gel membrane located above the carbon; a whole blood sample is placed on top of the gel membrane. The evidence indicates that the gel membrane—containing the enzyme and the mediator—filters the whole blood, allowing only the plasma to reach the carbon element. Moreover, this is an intended result; Self Care was issued a patent for this innovation.

Abbott argues that the presence of a filtering element in the FastTake® product is irrelevant because that filter is not an *intervening* filter, a filter located physically between the whole blood and the active electrode, and thus, FastTake® infringes the '551 patent. The FastTake® filter is located between the enzyme/mediator and the carbon, thereby allowing the whole blood to be in direct contact with the enzyme/mediator. In order to rule that the FastTake® product infringes the '551 patent, the Court would have to rule, first, that the word *"intervening"* applies to both *"membrane"* and *"other whole blood filtering member"*; and, second, that an *"intervening"* filter is one that is located physically between the whole blood and the active electrode—which Abbott defines as the carbon *and* the enzyme *and* the mediator. The Court finds both contentions problematic.

First, the Court does not read the word *"intervening"* as applying to the phrase *"other whole blood filtering member."* The term *"intervening"* is placed only before *"membrane."* The Court reads the term *"intervening membrane"* as constituting one way, but not the only way of filtering whole blood. Thus, any active electrode with a whole blood filter does not infringe the '551 patent. If Abbott had intended the '551 patent to claim an active electrode with a non-intervening filter then it should have written, "without an intervening membrane or other *intervening* whole blood filter."

The purpose of a filter is to prevent oxygen-carrying red blood cells found in whole blood from coming in contact with and fouling the carbon element. The FastTake® product has a filter—a silicon gel that filters the whole blood cells, allowing only the plasma (which has a lower concentration of oxygen than whole blood) to contact the carbon, thus, reducing fouling. The '551 patent. however, teaches how to construct a device with no filter—the whole blood directly contacts the carbon.

In the '551 patent, the key concept appears to be the *absence* of a filter not the *position* of one. Nowhere in the '551 patent does it teach how to build an active electrode with a whole-blood filter. Indeed, Abbott represented to the Patent & Trademark Office ["PTO"] that it was submitting claims covering an active electrode with the filtering membrane absent. In its December 3, 1997 amendment to the '551 patent, Abbott stated that it was filing new claims "which focus on the feature that the active electrode is directly exposed to a whole blood sample *without* the intervention of a barrier material such as a membrane or gel which filters out larger molecules or other blood components expected to interfere with the active electrode's op-

eration." [Emphasis in original]. Accordingly, the Court holds the phrase *"other whole blood filtering member"* is not limited by the term *"intervening."* [1] Consequently, since the evidence indicates that defendants' FastTake® product contains a *"whole blood filtering member,"* their product does not infringe the '551 patent.

Second, the prosecution history demonstrates that FastTake® does not infringe the '551 patent. Abbott now claims that the '551 patent is infringed if any part of the active electrode, which it now defines as carbon, enzyme, and mediator, touches the whole blood. This claim is inconsistent with what it told the PTO in order to obtain the patent. The Court will not interpret the claim language in a manner that is inconsistent with statements Abbott made during prosecution of the patent. *See Alpex Computer Corp. v. Nintendo Co., Ltd.*, 102 F.3d 1214, 1223 (Fed.Cir. 1996).

To obtain the '551 patent, Abbott represented to the PTO that in 1983 a person skilled in the art would believe that active electrodes could not be directly exposed to whole blood. Abbott told the patent examiner that it was claiming a device that was unlike the one described in the Nankai patent, U.S. Patent 4,897,173. In Nankai, the claimant describes in example four an active electrode that is similar to the FastTake® active electrode: in Nankai the filter is between the enzyme/mediator and the carbon, in FastTake® the enzyme/mediator are suspended inside the filter. In an affidavit filed with the December 3, 1997 amendment, Abbott cited Nankai example four as evidence that "active electrodes could not be directly exposed to whole blood samples." But the device in Nankai example four has a filter between the enzyme/mediator and the carbon layer, and the whole blood comes in direct contact with the enzyme/mediator. Consequently, if active electrode were defined to include all three elements (carbon, mediator, and enzyme), then Nankai example four would refute Abbott's claim that active electrodes could not be directly exposed to the blood. Since Abbott told the Examiner that Nankai example four represented a structure that Abbott was not claiming—because it had a filter above the carbon layer but below the enzyme/mediator—Abbott cannot now claim that such a structure falls within the claim. *See Alpex Computer*, 102 F.3d at 1223.

The Court finds FastTake® does not infringe the '551 patent because it does not satisfy the '551 condition that the active electrode is *"configured to be exposed to said whole blood sample without an intervening membrane or other whole blood filtering member."* Accordingly, Abbott is unlikely to succeed on the merits of its claim. Having so ruled, the Court declines to decide whether FastTake® meets the other two contested conditions—(1) that the gel membrane is not *"in electrical conduct with [the] conductor"*; and (2) that the gel membrane is not *"formed by coating a portion of the first conductor with a mixture of or layers of an enzyme ... and a mediator compound."* The Court also declines to rule on any of the defenses raised by the defendants.

Abbott's motion for preliminary injunction is denied.

SO ORDERED.

---

1. The word *"intervening"* is not defined in the specification, indeed, the word is not even used in the specification. Abbott argues the word should be defined as "physically between," whereas the defendants argue for a functional definition, "come between as an intervening force." As a general rule of claim construction, ambiguous terms should be given a narrow reading, excluding ambiguously covered subject matter. *See Ethicon Endo–Surgery v. United States Surgical Corp.*, 93 F.3d 1572, 1581 (Fed.Cir.1996). Since the Court holds that *"intervening"* does not apply to the phrase *"other whole blood filtering member,"* the Court does not decide which definition of *"intervening"* is appropriate.