### HOLMES PRODUCTS CORPORATION, Plaintiff,

v.

### CATALINA LIGHTING, INC., Defendant.

**Civil Action No. 98–40208–NMG.**

United States District Court, D. Massachusetts.

Sept. 22, 1999.

Dustin F. Hecker, Posternak, Blankstein & Lund, Boston, MA, Anthony E. Bennett, Justin F. Hecker, A. Thomas Kammer, Charles R. Hoffmann, Hoffmann & Baron, L.L.P., Jericho, NY, for plaintiff.

Robert W. Curry, Steven M. Cowley, Edwards & Angell, Boston, MA, Joseph J. Zito, Damascus, MD, for defendant.

### MEMORANDUM AND ORDER

GORTON, District Judge.

On October 14, 1998, Plaintiff Holmes Products Corporation ("Holmes") filed this action against Defendant Catalina Lighting, Inc. ("Catalina") seeking a declaration of non-infringement, invalidity, and unenforceability of Catalina's U.S.Patent No. 5,801,490 ("the '490 patent"), pursuant to 28 U.S.C. §§ 2201, 2202. Catalina brought counterclaims alleging patent infringement of claim 1 of its '490 patent. On December 18, 1998, Catalina moved for a preliminary injunction but withdrew that motion after the issues were fully briefed.

On January 26, 1999, Holmes, as assignee, was granted U.S.Patent No. 5,863,111 issued to Thomas M. Turner et al. ("the Turner patent" or "the '111 patent"). On May 7, 1999, this Court allowed a motion by Holmes to amend its complaint to include a claim of infringement of the Turner patent by Catalina. Now pending before this Court is Holmes's motion for a preliminary injunction against Catalina (Docket No. 38).

## I. Background

Catalina and Holmes are both manufacturers of halogen torchiere lamps. The case at bar relates to halogen torchiere lamps which include safety features for reducing or terminating power to the lamps when the temperatures exceed certain predetermined levels. Halogen torchiere lamps are characterized by four main elements: a base, an elongated stem extending vertically upward from the base, a concave lamp shade having an open top, and a halogen bulb positioned within the lamp shade. In the improved lamp, if the temperature in the shade exceeds a certain elevated temperature, such as may occur when a foreign object falls over the shade, a thermally sensitive switch cuts power to the bulb, thus protecting against risk of fire.

### A. Development of Invention Defined in Turner Patent

In the spring of 1996, Thomas M. Turner, the Compliance Department Supervisor for Holmes, became aware of efforts to revise the Underwriters Laboratories ("U.L.") standards regarding halogen floor lamps. During the spring and summer of 1996, Holmes devoted its efforts to devising solutions to make the lamps safer and in compliance with U.L. standards. At some point during that time, Holmes developed a solution to the overheating problem which included using a thermally sensitive switch in the shade of the lamp. The switch would shut off power to the bulb in the event the temperature in the shade exceeded an unsafe level such as when a foreign object fell over the shade.

Turner and his lab were instructed to develop a prototype lamp, and during the spring and summer of 1996, the project was in progress. A prototype which met the new U.L. standard was produced sometime in August and was tested by U.L. on or about August 26, 1996. U.L. approval of the product was received on September 11, 1996.

A patent application was filed by Holmes on September 9, 1996 and the patent was issued on January 26, 1999.

### B. Procedural Background

On September 1, 1998, the '490 patent for Catalina's halogen torchiere lamp was issued. Catalina is presently marketing and selling a halogen torchiere floor lamp which includes a thermally sensitive switch in the lamp shade.

On October 2, 1998, Catalina sent a letter informing Holmes that one of its products was infringing the '490 patent. The letter instructed Holmes to cease the sale and manufacture of such infringing products. As a result of that letter, on October 14, 1998, Holmes filed an action in this Court seeking a declaratory judgment of noninfringement.

On December 18, 1998, Catalina moved for a preliminary injunction but withdrew that motion after the issues were fully briefed. After the Turner patent was issued in January, 1999, this Court, on May 7, 1999, allowed a motion by Holmes to amend its complaint to include a claim of infringement of that patent by Catalina.

## IV. Analysis

■ Injunctive relief in patent cases is authorized by 35 U.S.C. § 283. Whether a preliminary injunction should issue turns upon four factors: 1) movant's reasonable likelihood of success on the merits, 2) the extent of irreparable harm suffered by movant without preliminary relief, 3) the balance of

hardships tipping in its favor, and 4) the adverse impact of injunctive relief on the public interest. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir.1988).

■ The burden is always on the movant to show entitlement to a preliminary injunction. *H.H. Robertson, Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 388 (Fed.Cir.1987). As the Federal Circuit has noted, "a preliminary injunction is a drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed.Cir.1993), *cert. denied*, 510 U.S. 1092, 114 S.Ct. 923, 127 L.Ed.2d 216 (1994).

### A. *Likelihood of Success on the Merits: Validity*

At the preliminary injunction stage, Holmes, as the movant, carries the burden of showing likelihood of success on the merits with respect to the validity and infringement of its patent. *Hybritech*, 849 F.2d at 1451; *see Genentech, Inc. v. Novo Nordisk, A/S*, 108 F.3d 1361, 1364 n. 2 (Fed.Cir.1997).

Therefore, if Catalina raises a "substantial question" concerning validity, enforceability, *or* infringement, Holmes, in order to succeed on its preliminary injunction motion, must demonstrate that Catalina's defense lacks "substantial merit." *See New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 882–83 (Fed.Cir. 1992). Absent such a showing by Holmes, its motion for a preliminary injunction must be denied. *See Novo Nordisk*, 108 F.3d at 1364.

■ Pursuant to 35 U.S.C. § 282, patents are presumed valid. However, the statutory presumption of a patent's validity does not relieve a patentee of its burden of showing likelihood of success

on the merits of all liability issues which will be disputed at trial, even when the issue concerns the patent's validity.[1] *New England Braiding Co.*, 970 F.2d at 882. The presumption of validity is not evidence to be weighed in determining the likelihood of success. *Id.* at 882–83. Rather, the presumption acts as a procedural device used at trial to place the burden of going forward with evidence and the ultimate burden of persuasion of invalidity at trial on the alleged infringer. *Id.*

Holmes maintains that the Turner patent is valid because the claims in the Turner patent define substantial improvements over prior art structures. However, Catalina challenges the validity of the Turner patent on the grounds that it was anticipated by Catalina's prior invention, as well as by the prior public disclosure of Underwriters Laboratories itself.

35 U.S.C. § 102 provides:

A person shall be entitled to a patent unless:

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or . . .

. . .

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective *dates of conception and reduction to practice of the invention*, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other.

*see, e.g., Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266 (Fed.Cir.1985). Here, however, Catalina does challenge the validity of the Turner patent so Holmes cannot stand on the presumption of validity alone.

---

1. If the alleged infringer does not challenge the patent's validity with evidence, the patent owner need do nothing to establish its rights under the patent. *Nutrition 21 v. United States*, 930 F.2d 867, 869–70 (Fed.Cir.1991);

(emphasis added). The Federal Circuit has stated that conception is the "formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed.Cir.1986). "Conception requires both the idea of the invention's structure and possession of an operative method of making it." *Amgen, Inc. v. Chugai Pharmaceutical Co., Ltd.*, 927 F.2d 1200, 1206 (Fed.Cir.1991), *cert. denied*, 502 U.S. 856, 112 S.Ct. 169, 116 L.Ed.2d 132 (1991).

Holmes argues that its invention predated the Catalina invention. With respect to the date of its invention, Holmes argues that the conception of the Turner invention occurred before May 23, 1996. Catalina takes issue with Holmes on this point and maintains instead that the correct date of invention of the Turner invention was August 15, 1996, relying on a document dated on that day which purports to establish that Holmes had first completed the entire invention, including placement of the thermal switch on that date.

As evidence of a May 23, 1996 date of conception, Holmes refers the Court to notes created by the President ("Livergood"), and Vice–President ("Stromberg") of its Lighting Division in preparation for a trip Livergood took on or about May 23, 1996. Holmes apparently relies on an undated, one-word notation, "sensor", as confirmation of conception in May, 1996. At this preliminary stage, it is, however, unclear whether the notation of "sensor" upon which Holmes heavily relies sufficiently establishes the "idea of the invention's structure and possession of an operative method of making it." *Amgen*, 927 F.2d at 1206.

To bolster its validity argument, Holmes also relies on a July 19, 1996 letter of Mr. Livergood in which he states: "Let's go ahead with putting the PTC Ceramic heat detector that we have used in our heaters for the past 4–5 years in our new 300 Watt halogen torchieres." However, relying on a statement by Holmes' own employee, Catalina takes the position that, even as of August 8, 1996, Holmes did not know whether Livergood's suggestion had become operative. Specifically, on that date, Stromberg stated in a fax cover note to a colleague David Lo of Holmes Lighting in Taiwan (Exhibit B in Stromberg's Declaration):

> This is what the "stopper" used in some heater looks like. As I understand it, this particular one may not work on a torchiere lamp. The engineering dept. has to figure this out.

With respect to the date of invention of its own lamp, Catalina argues that:

1) it had a fully operative, tested, working lamp with a thermal switch as early as August 10, 1996 thus antedating the Holmes invention, and

2) Mr. Fai, the inventor of the '490 patent, conceived of the thermal switch in February, 1996 and reduced it to practice in July, 1996.

Furthermore, Catalina argues that U.L. also publicly disclosed "an automatic temperature-regulating or -limiting control" used on a halogen torchiere as early as August 2, 1996 and that the U.L. Request for Comments dated June 14, 1996, demonstrates public knowledge of the claimed subject matter of the Turner patent as early as June 14, 1996. Thus, the argument goes, that disclosure antedates the date of the Turner invention.

At this preliminary injunction stage, the Court need not resolve the validity question but rather must "make an assessment of the persuasiveness of the challenger's evidence, recognizing that it is doing so without all evidence that may come out at trial." *New England Braiding*, 970 F.2d at 882–83. The Court may deny a motion for preliminary injunction "where the evidence presented in support of invalidity raises a substantial question, although the defense may not be entirely fleshed out." *Id.* at 883.

Here, Catalina has raised a substantial question about the validity of the Turner patent. Failing to demonstrate that Catalina's defenses lack substantial merit, Holmes is unable to carry its burden of demonstrating a likelihood of success on the merits with respect to the validity of the Turner patent.

## B. Remaining Factors

Because Holmes has not established a likelihood of success with respect to validity, this Court need not consider the remaining prerequisites for injunctive relief, namely, irreparable harm, balance of hardships and the impact on the public interest. *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed.Cir.1994) (noting that a district court may deny a preliminary injunction based on the movant's failure to establish a likelihood of success without making additional findings with respect to the other factors); *see, e.g., Cambridge Accusense Inc. v. Cambridge Aeroflo, Inc.,* 46 U.S.P.Q.2d 1250, 1251, 1253 (D.Mass. 1998). For the sake of completeness, however, this opinion includes a brief discussion of the remaining factors.

### 1. Irreparable Harm

Because this Court has determined that Holmes has failed to show reasonable likelihood of success on the merits, the presumption of irreparable harm does not attach. *See PPG Industries, Inc., v. Guardian Industries Corp.,* 75 F.3d 1558, 1566 (Fed.Cir.1996).

Holmes argues that injunctive relief is necessary to prevent irreparable harm to it resulting from Catalina's infringement of the Turner patent. Holmes specifically alleges loss of market share and erosion of its pricing structure.

In support of its irreparable harm showing, Holmes points to, *inter alia,* a letter from Home Depot canceling orders for Master Glow Torchieres. However, as Catalina responds, the canceled orders were *not* for the Turner lamps, but for *other* torchiere lamps which lack thermal sen-

sors. Furthermore, Holmes has not shown that any harm it may suffer as a result of Catalina's alleged infringement is not compensable by money damages. Accordingly, this Court concludes that Holmes has not met its burden of proving irreparable harm.

### 2. Balance of Hardships

With respect to the third factor, this Court must weigh "[t]he magnitude of the threatened injury to the patent owner ... in light of the strength of the showing of likelihood of success on the merits" against the injury to the accused infringer if the injunction is granted. *H.H. Robertson, Co.,* 820 F.2d at 390. In arguing its own hardship, Holmes reiterates the arguments made in its showing of irreparable harm, namely, loss of market share. Holmes asserts that an injunction will have no substantial impact on Catalina because it sells a number of products in addition to the accused lamp. This Court notes, however, that, to the extent Catalina's diversity of sales reduces the impact of the loss of any one of its products, the broad spectrum of products offered by Holmes will similarly reduce the hardship it will face upon denial of the requested injunction.

This Court finds that the relative hardships are roughly equivalent and therefore cannot overcome the fact that Holmes has not met its burden of proving likelihood of success and irreparable harm.

### 3. Public Interest Considerations

As Holmes points out, protecting rights secured by valid patents is an important public interest. *Smith Int'l, Inc. v. Hughes Tool Co.,* 718 F.2d 1573, 1581 (Fed.Cir.1983). The focus of this Court's inquiry is, however, whether "there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech,* 849 F.2d at 1458.

Here, the patent in suit is designed to improve the safety of torchiere lamps. According to Catalina, current safety specifi-

cations do not require a thermal switch in halogen lamps. An injunction could pose public safety risks because Catalina and other competitors may remove thermal switches from their lamps for fear of willful infringement damages.

If an injunction were granted, thermal sensors might disappear from those halogen torchieres manufactured and sold by Catalina. In light of those potential safety issues, this Court concludes that public interest consideration weighs against granting the preliminary injunction.

## ORDER

For the foregoing reasons, the motion by Holmes for a preliminary injunction (Docket No. 38) is DENIED.

**So ordered.**