NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition
is not citable as precedent. It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1090

ALLTRADE TOOLS, LLC,

Plaintiff-Appellee,

v.

OLYMPIA GROUP, INC.,

Defendant-Appellant.

_____

DECIDED: February 8, 2005

_____

Before NEWMAN, CLEVENGER, and GAJARSA, <u>Circuit Judges</u>.

CLEVENGER, <u>Circuit Judge</u>.

Olympia Group, Inc. ("Olympia") appeals the decision of the United States District Court for the Central District of California denying Olympia's Motion for Preliminary Injunction against the manufacture and sale of the Cobra Bar by Alltrade Tools, LLC ("Alltrade"). <u>Alltrade Tools, LLC v. Olympia Group, Inc.</u>, No. 03-CV-0458 (C.D. Cal. Oct. 8, 2003) ("Order"). We <u>affirm</u>.

I

Both Alltrade and Olympia are in the business of making and selling hand tools including pry bars. Olympia owns U.S. Patent No. 6,257,553 ("the '553 patent") covering a "utility bar." Olympia manufactures and sells the Gorilla Bar, an embodiment

of the '553 patent with a linear shank and oval cross section. Alltrade markets the Cobra Bar, a slightly curved pry bar with an hourglass-shaped cross sectional shank.

In opposition to the preliminary injunction motion, Alltrade asserted that it did not meet three limitations of Olympia's patent: (1) "an elongate shank having a generally oblong cross section . . . and shank having a major axis within said common plane greater than a minor axis along a direction transverse to said common plane"; (2) "an elongate shank . . . defining a longitudinal axis"; and (3) "a generally U-shaped portion." See '553 patent, col. 8, ll. 37-50. Only the first two limitations are at issue in this appeal.

The district court found that the disputed claim language was unambiguous. The court construed the term "generally oblong" to require a shank that was elliptical based on the inclusion of the terms "major axis" and "minor axis" in the claim. These terms were given their strict meaning from geometry. The claim term "longitudinal axis" was found to require a shank that had a linear or straight axis. Using this claim construction, the court found that Olympia had not shown a substantial likelihood that the Cobra Bar infringed claim 19 of the '553 patent because Alltrade's Cobra Bar did not have an elliptical cross section or a linear shank. Therefore the district court held that Olympia had failed to show a likelihood of success on the merits and denied the motion for a preliminary injunction.

Olympia now appeals to this court. According to Olympia, the district court erred in construing the claim limitations "generally oblong" and "longitudinal axis." We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1292(c)(1).

II

The grant or denial of a preliminary injunction is within the discretion of the district court. Novo Nordisk of N. Am., Inc. v. Genentech, Inc., 77 F.3d 1364, 1367 (Fed. Cir. 1996). This court reviews a denial of a preliminary injunction by the district court for abuse of discretion, which can be established by showing the district court decision is based on clearly erroneous factual findings, an error of law, or a clear error of judgment in weighing the relevant factors. Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001). In order for the court to grant Olympia a preliminary injunction, it must show: (1) a reasonable likelihood of success on the merits of the case; (2) it will suffer irreparable harm if an injunction is not granted; (3) the hardships balance in its favor; and (4) the injunction is in keeping with the public interest. Id. Irreparable harm will be presumed when patent validity and infringement have clearly been shown. Id. "[W]hen a preliminary injunction is denied, the movant carries a heavier burden to obtain a reversal." New England Braiding Co. v. A.W. Chesterton Co., 970 F.2d 878, 882 (Fed. Cir. 1992).

The court must first construe the meaning of the relevant claims before determining if there is a likelihood of infringement. Claim construction is a question of law this court reviews without deference to the district court. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454-56 (Fed. Cir. 1998) (en banc).

III

Before determining if the district court abused it discretion by denying Olympia's preliminary injunction, the construction of the claims must be revisited by this court. We begin with the language of disputed claim 19 of the '553 patent:

04-1090                                   3

A prying bar comprising <u>an elongate shank having a generally oblong cross section</u> and <u>defining a longitudinal axis</u> and having a prying hook at one end and a prying chisel at the other end, said prying hook having a tapered portion and together generally U-shaped portion integrally formed with said shank and said tapered portion generally defining a common plane of symmetry extending through the centers of said shank, prying hook, prying chisel and U-shaped portion, said tapered and U-shaped portions forming a prying footprint surface facing a direction away from said shank, said prying footprint surface forming the fulcrum point about which prying takes place, <u>said shank having a major axis within said common plane greater than a minor axis along a direction transverse to said common plane</u>.

'553 patent, col. 8, ll. 37-50 (emphases added). Olympia included several figures in the patent. Figures 1 through 4 describe an embodiment of the claimed tool.



'553 patent, figs. 1-4.

A

The disputed phrase "generally oblong cross section" must be read in the context of the entire claim as part of "an elongate shank having a generally oblong cross section . . . said shank having a major axis within said common plane greater than a minor axis along a direction transverse to said common plane." Id. at col. 8, ll. 37-38, 48-50. Simplified, this means that the cross section of the shank is "generally oblong" with a major axis in the plane of the hook, shank, and chisel, and a minor axis transverse or perpendicular to that plane. "Generally" is understood to mean "in a general manner" or "in disregard of specific instances and with regard to an overall picture" or "on the whole." Webster's Third New International Dictionary 945 (3d. ed 1993). "Oblong" is understood to mean "deviating from a square or circular form through elongation." Id. at 1557. "Generally oblong" is therefore a shape that is longer in one direction than the other, but not necessarily true to a specific geometrical shape, i.e., not a perfect oval or rectangle.

The district court interpreted the phrase in conjunction with the terms "major axis" and "minor axis," as used in the particular geometrical shape of an ellipse. When defined in reference to an ellipse, a "major axis" is "the axis passing through the foci of an ellipse," id. at 1363, and a "minor axis" is "the chord of an ellipse passing through the center perpendicular to the major axis," id. at 1440. We do not think this strict geometrical meaning should be assigned to the claims. The terms "major axis" and "minor axis" in the claim serve to orient the "generally oblong" shape with respect to the common plane of the hook, shank, and chisel. In the claim, "major axis" and "minor axis" are simply used to refer to the dimensions of the shape where a "major axis" is the

longer dimensional cross section and the "minor axis" is the shorter dimensional cross section. The terms are used this way in the specification, which for example, refers to the minor axis as the "smaller of the dimensional cross sections." '553 patent, col. 4, ll. 43-44. The terms are used to denote the relative dimensions of the orthogonal cross sections.

Interestingly, the terms "ellipse" and "elliptical" do not appear in the patent claims or specification. "Oblong" appears in the specification only once when the patentee states that "by providing an oblong or oval cross sectional dimension for the shank, as opposed to a sheet of flat metal or hex cross section shank, the user can apply significantly greater forces to the shank without incurring discomfort or pain, or possible injury." '553 patent, col. 6, ll. 27-32. Because the patentee requires an arcuate surface on the edge of the shank along the major axis to provide the comfortable grip described in the patent, a rectangular shaped cross section, like that of a flat bar, is not included in claim 19. The cross sectional shapes covered by the claim could be similar to ovals or rounded rectangles, or other geometrical shapes that have been elongated or stretched.

The use of the terms "major axis" and "minor axis" does not limit the shank to only elliptical cross sections. However, the use of the terms does limit the orientation of the shank with respect to the common plane of the tool and limits the shank cross section to a shape that has a longer dimension in the direction of the common plane and a shorter dimension transverse or perpendicular to the common plane of the tool. The district court therefore erred when it defined the shank cross section to be elliptical. This error, however, is harmless to the denial of the preliminary injunction motion.

B

Olympia also asserts the district court was incorrect when it construed the claim limitation "an elongate shank . . . defining a longitudinal axis" to require a linear shank. Olympia argues against defining the claim element to require a straight tool shank and argues that "longitudinal axis" just means the line—curved, straight, or both—that is defined by the shank itself. We agree with the district court that the scope of the claims should be limited to cover pry bar shanks that are straight.

"Longitudinal" means "running lengthwise," Webster's, supra, at 1333, and "axis" is "a straight line about which a body or a 3-dimensional figure rotates or may be supposed to rotate," id. at 153. Other definitions of axis used in various technical fields also explicitly include a straight line. See id. In general math parlance, a coordinate system in three dimensions has an x, y, and z axis, which are straight lines that are perpendicular to each other and used as a reference system to define points in geometric space. See id.

Requiring "longitudinal axis" to mean the strict geometrical definition of an axis of rotation or axis of symmetry would read the embodiment disclosed in Figure 1 of the patent out of the claims. See '553, Figure 1 (disclosing a shank that does not have an axis of rotational symmetry). The "axis" in claim 19 does not include a requirement of rotational symmetry. An axis can simply be "a line actually drawn and used as the basis of measurements in an architectural or other working drawing" or "a main line of direction, motion, growth, or extension." Webster's, supra, at 153. These definitions incorporate the use of the word "line" and state that the line must be such that it can be used as a measurement reference or a direction. A line of reference is necessarily

straight.  In the specification, the axis is used to define various angles and distances, for example angle α and distances d and c in figure 1.  The angle of the hook is measured in reference to the axis of the tool.  Therefore, the ordinary meaning of the term "axis" as linear is supported by the specification.

Olympia argues that this meaning is contradicted by usage in the prior art, which it suggests teach axes that are not straight.  The references relied on by Olympia actually teach the contrary, and show axes drawn as straight reference lines in the patent figures.  See U.S. Patent No. 5,577,711, Fig. 1 ("the '711 patent" or "Shine"); U.S. Patent No. 4,844,416, Figs. 1-2 ("the '416 patent" or "Hand").  In fact, the Shine reference uses the "longitudinal axis" in measuring the length of the body of the tool, a linear dimension.  '711, col. 3, ll. 5-7.  The other reference that Olympia claims discloses a curved axis also shows a straight line.  See '416, Fig. 1.  The Hand reference actually discloses that "[c]rowbar 10 includes a reference vertical plumb line or axis 12 and a reference horizontal line or axis 14, which is disposed normal to line 12."  Id. at col. 2, l. 24.  This description suggests an "axis" is a line that can be vertical, horizontal, plumb, or used as a reference.  These terms are used in the context of a straight line.  Olympia's own references to prior art do not support its assertion that an axis, as used in the prior art, can be curved or nonlinear; rather the art uses the term for straight lines.

Finding that the axis must be linear or straight does not improperly import limitations from the specification.  It only incorporates the ordinary meaning of axis found not only in the dictionary but as used in the art.  Therefore, the "longitudinal axis" in claim 19 is a straight line that follows the center of the shank lengthwise.  Although

Olympia argues that the shank curvature of the Alltrade tool is <u>de</u> <u>minimus</u>, they never put in evidence of the deviation. Because the court correctly found that the claim required a linear axis and that this axis is not present in the Cobra Bar, the court did not err in finding that Olympia had not demonstrated a likelihood of success on infringement.

IV

Although the district court erred in its construction of "generally oblong" by restricting the claim to an elliptical cross section, the court was correct when it found that the claim element "longitudinal axis" necessitated a shank that defined a straight reference line. Based on the district court's proper analysis with respect to that claim element, Olympia did not meet its burden of showing a likelihood of success on the merits of the infringement claim. The decision of the district court is therefore affirmed.

COSTS

No costs.